UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARS LOGICA, INC.,<br><br>Plaintiff<br><br>v.<br><br>RWS Holdings PLC and SDL Inc,<br><br>Defendants | C.A. No. |

**COMPLAINT AND JURY DEMAND**

The plaintiff, Ars Logica, Inc. ("Plaintiff" or "Ars Logica"), brings claims against the defendants for copyright infringement and other relief arising from the defendants' use and alteration of the Plaintiff's copyrighted materials in violation of copyright and state laws, and demonstrating other unfair and deceptive conduct.

**PARTIES**

1. The Plaintiff, Ars Logica, is a Massachusetts corporation with a principal place of business at 53 State Street, Suite 500, Boston, MA 02109.

2. Upon information and belief, the defendant, RWS Holdings PLC, is a public limited company organized under the laws of the United Kingdom, with its registered office at RWS Compass House, Vanwall Business Park, Vanwall Road, Maidenhead, Berkshire, SL6 4UB, United Kingdom. RWS maintains a regular place of business at 201 Edgewater Drive, Suite 225, Wakefield, Massachusetts 01880.

3. Upon information and belief, the defendant, SDL Inc, is a Delaware corporation registered to do business in Massachusetts with a principal address located at 201 Edgewater

Drive, Suite 225, Wakefield, Massachusetts 01880. SDL Inc is the affiliate and/or wholly owned subsidiary of RWS Holdings PLC. RWS Holdings PLC and SDL Inc are referred to collectively as “Defendants” and/or “RWS”.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Copyright Act, 17 U.S.C. § 101 et seq. Plaintiff also brings Massachusetts state-based claims over which this Court has supplemental jurisdiction because they are sufficiently related to claims in the action within such original jurisdiction that they form part of the same case or controversy. 28 U.S.C. §§ 1367.

4. This Court has personal jurisdiction over RWS because RWS is registered to do business in Massachusetts, maintains a regular place of business in Wakefield, Massachusetts, has purposefully directed its activities at Massachusetts, and/or the acts of infringement giving rise to this Complaint occurred in and were directed at, among other places, Massachusetts, where Plaintiff is based and suffered injury.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendants and Plaintiff reside and may be found in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

6. Ars Logica is a technology-research firm that produces objective, in-depth evaluations of enterprise software, including so-called component content management systems (“CCMS”).

7. Among Ars Logica's principal works is its “Compass Guide to Component Content Management Systems” series, which evaluates and scores leading CCMS platforms, including RWS's products.

8. RWS is a global enterprise AI and language-services company that helps organizations manage, translate, localize, protect, and deliver high-stakes content, particularly for technical, regulated, legal, life-sciences, and multinational applications.

9. One of RWS’s software products is its RWS Tridion Docs. RWS Tridion Docs is a CCMS for creating and governing large bodies of structured documentation, such as manuals, policies, procedures, and regulatory materials. Rather than treating publications as static files, it stores individual topics, paragraphs, tables, and graphics as reusable, version-controlled components—often using DITA/XML—so teams can author once, reuse approved content across documents and channels, control review and approval workflows, and more efficiently assimilate, translate, distribute and/or publish a collection of content. Generally speaking, RWS Tridion Docs makes it easier for large enterprises to improve the discoverability, accuracy, relevance, assimilation, and delivery of content – at the right time, and in the right languages, contexts, and formats.

10. The works at issue in this action are three copyrighted research reports registered to and owned by Ars Logica (collectively, the “Works”): (i) the Compass Guide to Component Content Management Systems Q4 2021 – Evaluation of RWS Tridion Docs (the “2021 Compass Guide”), first published October 28, 2021; (ii) the Consolidated Vendor Scorecard – Compass Guide to Component Content Management Systems (the “Scorecard”), first published October 28, 2021; and (iii) the Compass Guide to Component Content Management Systems Q3 2024 – Evaluation of RWS Tridion Docs (the “2024 Compass Guide”), first published August 1, 2024.

11. Ars Logica holds valid certificates of copyright registration for each of the Works issued by the United States Copyright Office: (i) the 2021 Compass Guide, Registration No. TX 9-617-073, effective July 16, 2026 (Exhibit A, appended hereto); (ii) the Scorecard, Registration No. TX 9-616-836, effective July 15, 2026 (Exhibit B); and (iii) the 2024 Compass Guide, Registration No. TX 9-617-074, effective July 15, 2026 (Exhibit C).

12. Ars Logica is the sole and exclusive owner of the copyrights in the Works.

13. On or about November 28, 2022, RWS and Ars Logica entered into a written Purchase Agreement (the "License," a copy of which is attached as Exhibit D), under which Ars Logica granted RWS a limited, six-month electronic reprint license to post the 2021 Compass Guide covering RWS Tridion Docs on RWS's website for the period November 1, 2022 through April 30, 2023, together with equivalent six-month distribution rights for the accompanying Scorecard. Id.

14. Prior to the License in November, 2022, RWS (and/or its affiliates) had licensed other works from Ars Logica dating back to August 5, 2010.

15. The License was limited and expressly conditioned. It provided that the report had to be displayed in its entirety and in its original format, the Ars Logica copyright notice and approved logo had to be affixed prominently, and neither RWS nor its partners could seek monetary consideration from third parties to access the report. RWS paid USD $6,422.50 for these limited rights. Id.

16. RWS thereafter renewed and extended its distribution rights through three successive written Purchase Agreements to wit: (i) an agreement executed April 11, 2023, licensing the 2021 Compass Guide for the period May 1, 2023 through December 31, 2023, together with equivalent eight-month distribution rights for the Scorecard, for which RWS paid

USD $6,422.50 (Exhibit E); (ii) an agreement executed August 5, 2024, licensing the 2024 Compass Guide for the twelve-month period August 1, 2024 through July 31, 2025, for which RWS paid USD $6,422.00 (Exhibit F); and (iii) an agreement executed January 17, 2025, licensing the 2024 Compass Guide for the five-month period August 1, 2025 through December 31, 2025, for which RWS paid USD $2,676.00 — a figure representing a pro-rated amount (Exhibit G). Each of these agreements was subject to the same conditions as the License, and none granted RWS any rights beyond its stated term.

17. At all times, RWS's authority to display and distribute the Works was limited to the specific terms granted in the License and successive Purchase Agreements. RWS never obtained any license to distribute the Scorecard beyond December 31, 2023, and it obtained no license of any kind for the Works during the period January 1, 2024 through July 31, 2024, or for any period after December 31, 2025. Whatever distribution rights RWS held terminated upon the expiration of the final Purchase Agreement on December 31, 2025 (Exhibit G), and RWS did not obtain any renewal or new license thereafter.

18. Notwithstanding the expiration of its license, RWS continued to display the Works and make them available for download on its website, including at its "tridion-docs-best-ccms" landing page and with "Tridion Docs Best CCMS" language built into the permanent global navigation of the Content Technology sections of the RWS website, without Ars Logica's authorization.

19. RWS's unauthorized use of the Works spans the following periods: (i) the Scorecard, continuously since January 1, 2024; (ii) the 2021 Compass Guide, from January 1, 2024 through July 31, 2024, and again from January 1, 2026 to the present; and (iii) the 2024 Compass Guide, from January 1, 2026 through April 3, 2026.

20. Additionally, on or about June 4, 2024 (in the sixth month after the Scorecard license expired), RWS published the "Technical Communication" brochure. On page 11, the document states "Independent analyst firm Ars Logica named Tridion Docs the best overall CCMS on the market, especially suited to large enterprises with complex content needs," and provides a hyperlink to the November 2, 2021 press release on RWS' website which prominently displays the then-outdated and unlicensed Scorecard infographic.

21. Also, on or about July 5, 2024 (in the seventh month after the Scorecard license expired), RWS published the "Enterprise knowledge hub" brochure. On page 9, the document contains the same language and link to the November 2, 2021 press release as referred to in paragraph 19, above.

22. In or around the period beginning August 30, 2024, RWS's landing page for download of the 2024 Compass Guide features the Scorecard from 2021 presented alongside the 2024 Compass Guide download, as though they were contemporaneous. This is misleading to those who see the Scorecard and download the report because they have no way of knowing that the scorecard covered Version 14 SP4 of Tridion Docs, and the report covered Version 15.1 of Tridion Docs. These two versions were released approximately two and one-half years apart, yet readers would inaccurately believe the scores represented in the Scorecard they are seeing are for the report they are downloading. During the elapsed two and one-half years, not only had the RWS Tridion Docs product changed, but the overall market landscape which the Scorecard represents had also changed. By combining the old Scorecard and the new report, RWS caused the following harm:

a. RWS violated the explicit terms of the 2021 (expired) Scorecard license by altering the work. Only the main infographic is posted—not the rest of the

Scorecard—but the licensing agreement makes clear that: "the Report must be displayed in its entirety and in its original format." The "Report" referred to in said agreement is the 2021 Compass Guide, but the agreement states further that "[a]dditional services in this agreement include equivalent 12-month distribution rights for the accompanying Consolidated Vendor Scorecard from the Compass Guide to Component Content Management Systems series." Thus, not only did RWS post a report with an expired license, it also posted only a part of that report. If the complete scorecard had been posted, readers would have immediately seen the October 28, 2021 publication date on the first page. Therefore, the alterations by RWS created a misleading and false association between the report and Scorecard;

b. Said conduct caused Ars Logica harm by misrepresenting outdated product research and outdated market research as current;

c. RWS deceived its prospective and existing customers through a version mismatch and two and one-half years of elapsed time. Customer implementations of Tridion Docs can easily cost significantly more than $1 million. Thus, each RWS customer that chose a sub-optimal product based on old market analysis could reasonably be expected to have suffered losses in the millions of dollars through today.

23. During 2025, Ars Logica repeatedly reminded RWS, no fewer than nine times, of the upcoming expiration of its distribution rights and informed RWS that it would need to remove the 2024 Compass Guide from its website or renew its license.

24. On January 5, 2026, Ars Logica notified RWS that the license had expired and demanded that the 2024 Compass Guide be removed from RWS's website. It was not yet known

to Ars Logica at that time that RWS was actively and without authorization hosting the other Works publicly.

25. RWS disregarded Ars Logica's repeated demands and continued to display and distribute the 2024 Compass Guide. Two of the Works remain available still today on RWS's website, namely the 2021 Compass Guide and the Scorecard.

26. RWS's infringement was knowing and willful.

27. RWS acknowledged the relevance and value of the Works to its sales efforts.

28. RWS was repeatedly informed that its license had expired and that a renewal was required, and yet continued its unauthorized use of the 2024 Compass Guide without renewal, as well as its unauthorized use of the other Works.

29. Further, after receiving numerous notices from Ars Logica that RWS was using the 2024 Compass Guide without proper licensing, RWS launched a marketing campaign on or about March 17, 2026, which disseminated the 2024 Compass Guide as well as the Scorecard infographic to third parties on its marketing list—including to Ars Logica, who received the marketing email. A copy of the marketing email is appended as Exhibit H.

30. As published by Ars Logica, the Scorecard prominently bears Ars Logica's copyright management information, including the attribution line "Source: Ars Logica, Inc." and the Ars Logica logo displayed as a watermark on the face of the Scorecard's principal infographic (the "Scorecard Infographic").

31. The only authorization Ars Logica ever gave RWS to use the Scorecard Infographic apart from the licensed reports was a limited permission, granted in October 2021, to reproduce the graphic in a single press release RWS issued on or about November 2, 2021. Ars

Logica never authorized RWS to alter, restyle, or adapt the Scorecard Infographic, or to remove Ars Logica's attribution or logo from it.

32. RWS has not ceased its use of Ars Logica's Works. As recently as May 12, 2026, RWS published a new web page (at rws.com/content-management/tridion/docs/) featuring a modified version of the Scorecard Infographic that RWS itself described as a "Tridion-stylized Ars Logica graphic."

33. That modified graphic is a derivative of Ars Logica's copyrighted Scorecard. RWS recast and restyled the Scorecard Infographic to RWS's own visual branding while retaining the Scorecard's original, protected expression, including the same axis names, the same axis scaling (4.5 to 9.5 on one axis and 4.5 to 8.75 on the other), the same section names, and the same arrangement and placement of the competing vendors plotted on the graphic (with competing vendor names removed). In creating the derivative, RWS deleted Ars Logica's logo watermark and removed the "Source: Ars Logica, Inc." attribution. These unauthorized modifications have created confusion in the marketplace.

34. Between on or about May 12 and May 15, 2026, RWS published a second web page, "Tridion Docs for Financial Services" (at rws.com/content-management/tridion/finance/), which likewise embedded a restyled and anonymized version of the Scorecard Infographic with the "Source: Ars Logica, Inc." attribution and the Ars Logica watermark removed (this version included the vendor names as they appear in the Ars Logica Scorecard). These unauthorized modifications have created confusion in the marketplace.

35. RWS's own file-naming confirms that the source of the modified graphics was Ars Logica because the file names of the modified graphics explicitly refer to Ars Logica: the image files RWS embedded on these pages are named "tridion-stylised-ars-logica-graphic-white-

bg-01_tcm228-251349.webp" and "tridion-stylised-ars-logica-graphic-01_tcm228-278996.png," respectively.

36. Additionally, RWS has published another version of the Works on its webpage with a different variation on infringement. This version displays only pages 3-4 of the Scorecard (the full Scorecard has four pages), inserted between pages 10 and 11 of the 2021 Compass Guide. This causes confusion, because the combination of documents creates two figures labeled "Figure 1," two figures labeled "Figure 2," and pagination errors starting after page 10 of the 2021 Compass Guide. The errors erode public confidence in Ars Logica's work and reputation as an analyst. Any misspellings, formatting problems, and other errors in a publication are harmful to brand equity/reputation, which is exactly why the licensing agreements require RWS to reproduce the reports in full. RWS has breached that obligation.

37. As a direct and proximate result of RWS's infringement, Ars Logica has suffered actual damages, and RWS has realized substantial unjust profits attributable to its unauthorized distribution of the Works in an amount no less than $8,959,808 as of October 14, 2026. This amount will continue to increase for so long as the Works remain on RWS's website and the infringements continue.

**<u>COUNT I</u>**
**COPYRIGHT INFRINGEMENT — 17 U.S.C. § 501**
**(**Against both Defendants**)**

38. Ars Logica repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

39. Ars Logica owns valid, registered copyrights in each of the Works. Registration of the copyright claims has been made in accordance with 17 U.S.C. § 411(a), and Ars Logica

has therefore satisfied the statutory prerequisite to suit. 17 U.S.C.A. § 411; Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC, 586 U.S. 296 (2019).

40. As the copyright owner, Ars Logica holds the exclusive rights to reproduce, distribute, display, and prepare derivative works from the Works under 17 U.S.C. § 106. 17 U.S.C.A. § 106; Perea v. Ed. Cultural, Inc., 13 F.4th 43, 52 (1st Cir. 2021).

41. RWS infringed those exclusive rights by copying, displaying, and distributing the Works on its website, without Ars Logica's authorization, license or permission, after the License expired. A former licensee's continued distribution of a copyrighted work without the owner's authorization constitutes infringement under 17 U.S.C. § 501. 17 U.S.C.A. § 501; Homeowner Options for Mass. Elders, Inc. v. Brookline Bancorp, Inc., 754 F.Supp.2d 201, 209 (D. Mass. 2010).

42. RWS committed the foregoing acts of infringement knowingly and willfully.

43. Ars Logica is entitled to recover its actual damages and RWS's profits attributable to the infringement under 17 U.S.C. § 504(b).

44. Ars Logica claims its actual damages and RWS's profits attributable to the infringement and other damages which flow from the infringements.

45. Ars Logica is further entitled to injunctive relief restraining and enjoining RWS's continued infringement under 17 U.S.C. § 502, and, to the extent available, to recover its full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

## COUNT II
## BREACH OF CONTRACT
(Against both Defendants)

46. Ars Logica repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

47. The License and the renewal and extension agreements at **Exhibits D-G** are enforceable contracts between the parties.

48. Ars Logica has performed all material terms under such contracts.

49. Such contracts require a valid license agreement pursuant to which RWS needed to obtain consent for its continued use of the Works.

50. RWS failed to seek, pay for or obtain consent from Ars Logica for its continued use of the Works after the expiration of the license term in such contracts, thereby materially breaching such contracts. Such failures by RWS were knowing, willful and intentional.

51. Ars Logica has been harmed by RWS's breaches of contract in an amount to be determined at trial, and in no event less than the reasonable fees for the period the Works were displayed without authorization.

**COUNT III**
**VIOLATION OF M.G.L. C. 93A, §§ 2 AND 11**
**(**Against both Defendants**)**

52. Ars Logica repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

53. This Count arises from the parties' commercial licensing relationship and from RWS's unfair and deceptive conduct in the course of that relationship. It does not depend on Ars Logica's ownership of any copyright, and Ars Logica would be entitled to relief on this Count even if it held no copyright or any rights equivalent to copyrights in the Works.

54. At all relevant times, the parties have been engaged in trade or commerce.

55. At all relevant times, Ars Logica was engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11, operating as an independent research and advisory firm with its

principal place of business in Boston, Massachusetts, and licensing its research reports to businesses for a fee.

56. At all relevant times, RWS was engaged in trade or commerce within the meaning of M.G.L. c. 93A, § 11, marketing and selling its RWS Tridion Docs software and related products, and licensing Ars Logica's research reports to promote those products.

57. The conduct giving rise to this Count arose out of business transactions between Ars Logica and RWS — the successive Purchase Agreements and the licensing relationship they created — and out of RWS's wrongful conduct in the performance, renewal, and payment of those agreements.

58. Between 2022 and 2025, Ars Logica and RWS entered into a series of written Purchase Agreements (**Exhibits D-G**) under which Ars Logica granted RWS a fee-bearing, fixed-term, non-exclusive license to post and distribute the Works on RWS's and its partners' websites.

59. Each License Agreement (a) authorized display of the licensed Work only for a stated term; (b) required that the Work be displayed in its entirety and in its original format with Ars Logica's copyright notice and approved logo affixed; and (c) prohibited RWS and its partners from charging any third party for access to the Work.

60. The most recent License Agreement authorized RWS to display the 2024 Compass Guide only for the five-month period August 1, 2025 through December 31, 2025, for a fee of $2,676.00. That fee was a proration of the $6,422.00 annual rate set in the immediately preceding twelve-month agreement (which RWS paid), which likewise licensed only the 2024 Compass Guide and not the Scorecard.

61. The $2,676.00 fee, and the $6,422.00 annual rate on which it was based, both reflected a fifty-percent discount that RWS itself proposed and Ars Logica agreed to. In February 2024, in response to Ars Logica's inquiry whether RWS wished to license an updated report without the Scorecard, RWS proposed paying fifty percent of the original price of the one-year license — "i.e., $6,422" — on the stated rationale that RWS "would only get one of the two reports." The undiscounted annual price for the full package (the Compass Guide together with the Scorecard) was $12,845.00. RWS thus obtained a fifty-percent reduction on the 2024 Compass Guide license alone, on the express condition that it would receive and display only the Compass Guide and not the Scorecard. Yet at the very time RWS requested and received the discount, and continuously thereafter, RWS kept displaying the 2021 Scorecard — which it had licensed only through December 31, 2023 — on its website, thereby eliminating the stated basis for the discount while retaining its benefit.

62. Starting in or around September 2025, Ars Logica repeatedly informed RWS that RWS needed to renew its licensing agreement for usage of 2024 Compass Guide beyond December 31, 2025, and RWS repeatedly indicated that it intended to renew, while ultimately RWS declined to execute any renewal, issue any purchase order, or pay the amounts it owed for its continuing display of the 2024 Compass Guide and Scorecard.

63. RWS engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, § 2, including the following, each of which is independent of any act of copying and none of which requires Ars Logica to hold a copyright:

a. RWS retained the benefit of a bargained-for discount while withholding the consideration for it. RWS obtained and retained a reduction of $9,131.34 in its license fee on the express condition that the Scorecard would no longer be displayed. Yet RWS

continued to display the Scorecard on its Compass Guide download page, thereby knowingly securing for itself an unbargained-for benefit (the full report-plus-Scorecard package) while paying only the discounted, report-only price. The distinction between the Compass Guide and Scorecard is significant, because the Compass Guide provides detailed review of RWS's product, whereas the Scorecard compares RWS's product's performance against other third-party vendor products (i.e., RWS's competitors).

b. RWS failed and refused to pay amounts due under the licensing relationship. Despite repeated invoices and a written demand for immediate payment of $10,593.44 — comprising the reimbursement of the improperly retained discount and the fee for RWS's continued distribution of the Compass Guide beyond the licensed term, prorated through February 11, 2026 (the date on which RWS falsely represented that it had taken down the 2024 Compass Guide)[1] — RWS failed and refused to pay amounts owed. On or about April 1, 2026, RWS's Divisional Chief Financial Officer promised to make payment of the $10,593.44 but RWS did not do so. To date, RWS has paid nothing.

c. RWS's conduct was designed and/or had the effect of stringing Ars Logica along, by continuing to use the 2024 Compass Guide and not offering to pay for that right, by negotiating a discount for its stated intention not to use the Scorecard while continuing to use the Scorecard, by informing Ars Logica on February 11, 2026 that the 2024 Compass Guide had been taken down when it had not, and by informing Ars Logica on March 2, 2026 that RWS had even created a purchase order to pay for the reversal of the discount and prorated days through February 11, 2026.

d. RWS used its breach as leverage to procure unbargained-for benefits.

[1] After RWS falsely represented that it had taken down the 2024 Compass Guide on February 11, 2026, RWS nonetheless included the 2024 Compass Guide and Scorecard in its email marketing campaign of March 17, 2026 (see paragraph 29, supra), and ultimately kept the 2024 Compass Guide up on its website until April 3, 2026.

RWS used its continued, unpaid possession and display of the Works, and its control over the payment and purchase-order process, as leverage to avoid its payment obligations and to extract the continued commercial benefit of the Works on terms to which Ars Logica never agreed.

64. Ars Logica repeatedly notified RWS that the license was expiring and, on or about January 5, 2026, expressly demanded that RWS remove the 2024 Compass Guide from its website unless the license was renewed. RWS neither renewed the license nor removed the Works, and instead continued to display them for profit.

65. RWS's acts and practices fall within at least the penumbra of established concepts of unfairness, were immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to Ars Logica.

66. RWS's conduct was knowing and was intended to secure unbargained-for benefits to Ars Logica's detriment.

67. The actions and transactions constituting RWS's unfair and deceptive conduct occurred primarily and substantially within Massachusetts. Ars Logica negotiated, issued, and administered the License Agreements from its offices in Massachusetts; invoices to, and payments from, RWS were almost always issued to and from RWS's Wakefield, Massachusetts office; the license fees were payable to Ars Logica in Massachusetts; and the injury caused by RWS's conduct — the nonpayment of fees and the loss of the value of the Works — was suffered by Ars Logica in Massachusetts.

68. As a direct and proximate result of RWS's unfair and deceptive acts and practices, Ars Logica suffered a loss of money and property, including unpaid license and distribution fees and the lost value of its Works, in an amount to be proven at trial.

69. RWS's violations of G.L. c. 93A, § 2 were willful and knowing within the meaning of G.L. c. 93A, § 11, entitling Ars Logica to recover two to three times its actual damages, together with reasonable attorneys' fees and costs.

**COUNT IV**
**COPYRIGHT INFRINGEMENT — PREPARATION OF UNAUTHORIZED DERIVATIVE WORKS**
**17 U.S.C. §§ 106(2) AND 501**
**(**Against both Defendants**)**

70. Ars Logica repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

71. Ars Logica owns valid, registered copyrights in the Works, including the Scorecard, and holds the exclusive right under 17 U.S.C. § 106(2) to prepare, and to authorize the preparation of, derivative works based upon the Works.

72. A "derivative work" is a work based upon one or more preexisting works in which the preexisting work is "recast, transformed, or adapted." 17 U.S.C. § 101. Elements of a preexisting work that are carried into a later work remain protected by the copyright in the preexisting work. Greene v. Ablon, 794 F.3d 133, 152 (1st Cir. 2015).

73. Without Ars Logica's authorization, RWS prepared derivative works based upon the Scorecard by recasting and restyling the Scorecard Infographic to RWS's own visual branding while retaining the Scorecard's original, protected expression — including its axis names, its axis scaling, its section names, and the selection, arrangement, and placement of the vendors plotted on the graphic — and by deleting Ars Logica's logo and attribution. The selection, arrangement, and placement embodied in the Scorecard are original works of authorship.

74. RWS reproduced and publicly displayed these unauthorized derivative works on its website, including the pages described above, thereby also infringing Ars Logica's exclusive rights to reproduce and publicly display the Works under 17 U.S.C. § 106(1) and (5).

75. RWS's preparation, reproduction, and display of unauthorized derivative works constitutes infringement of Ars Logica's copyrights under 17 U.S.C. § 501.

76. RWS committed these acts of infringement knowingly and willfully, as confirmed by, among other things, RWS's own designation of the images as a "Tridion-stylized Ars Logica graphic" and its naming of the embedded image files as "tridion-stylised-ars-logica-graphic" files.

77. As a direct and proximate result, Ars Logica is entitled to its actual damages and RWS's profits attributable to the infringement under 17 U.S.C. § 504(b), to injunctive relief under 17 U.S.C. § 502, and, to the extent available, to its full costs and reasonable attorneys' fees under 17 U.S.C. § 505.

**COUNT V**
**VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT — REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION, 17 U.S.C. § 1202**
**(**Against both Defendants**)**

78. Ars Logica repeats and incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

79. The attribution line "Source: Ars Logica, Inc." and the Ars Logica logo displayed on the face of the Scorecard Infographic are copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202(c), because each conveys the name of, and identifying information about, the author and copyright owner of the Work. 17 U.S.C. § 1202(c)(2)–(3), (7); Michael Grecco Prods., Inc. v. Alamy, Inc., 372 F. Supp. 3d 131, 137-38 (E.D.N.Y. 2019).

80. Without Ars Logica's authorization, RWS intentionally removed and altered that CMI when it created the modified "Tridion-stylized" versions of the Scorecard Infographic — deleting the Ars Logica logo watermark, and removing the "Source: Ars Logica, Inc." attribution — in violation of 17 U.S.C. § 1202(b)(1).

81. RWS thereafter distributed and publicly displayed the Scorecard Infographic, in its "Tridion-stylized" versions, knowing that Ars Logica's CMI had been removed or altered without authority, in violation of 17 U.S.C. § 1202(b)(3).

82. RWS acted knowing, or having reasonable grounds to know, that its removal of Ars Logica's CMI and its distribution and display of the anonymized graphics would induce, enable, facilitate, or conceal infringement — including RWS's own continued, unlicensed use of the Works. Mango v. BuzzFeed, Inc., 970 F.3d 167, 172-73 (2d Cir. 2020).

83. As a result of RWS's violations of 17 U.S.C. § 1202, Ars Logica is entitled to recover its actual damages and RWS's ill-gained profits, or, at its election, statutory damages of not less than $2,500 and not more than $25,000 for each violation, together with injunctive relief, costs, and reasonable attorneys' fees under 17 U.S.C. § 1203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ars Logica, Inc. respectfully requests that this Court:

a. Enter judgment that Defendants have infringed Ars Logica's copyrights in the Works, including by reproducing and publicly displaying the Works and by preparing, reproducing, and displaying unauthorized derivative works based upon the Works, in violation of 17 U.S.C. §§ 106 and 501;

b. Award Ars Logica its actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial but not less than $8,959,808;

c. Enter judgment that Defendants violated 17 U.S.C. § 1202 by removing and altering Ars Logica's copyright management information and by distributing and displaying the Works and derivative works knowing that such information had been removed or altered, and award Ars Logica its actual damages and Defendants' profits or, at Ars Logica's election, statutory damages of not less than $2,500 and not more than $25,000 for each violation pursuant to 17 U.S.C. § 1203;

d. Preliminarily and permanently enjoin Defendants and all persons acting in concert with it from further reproducing, displaying, distributing, or preparing derivative works based upon the Works pursuant to 17 U.S.C. §§ 502 and 1203(b);

e. Order Defendants to remove the Works and all derivative works based upon the Works from its website and all other platforms within its control and to deliver up for destruction all infringing copies pursuant to 17 U.S.C. §§ 503 and 1203(b);

f. Award Ars Logica its full costs and reasonable attorneys' fees to the extent available pursuant to 17 U.S.C. §§ 505 and 1203;

g. Enter judgment that Defendants have breached their contracts with Ars Logica, and award Ars Logica the reasonable value for the unauthorized use of the Works;

h. Enter judgment that Defendants violated M.G.L. c. 93A, §§ 2 and 11, and award Ars Logica its actual damages, treble damages, reasonable attorney's fees and costs;

i. Award pre-judgment and post-judgment interest as allowed by law; and

j. Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Ars Logica, Inc. demands a trial by jury on all issues so triable.

Respectfully submitted,

ARS LOGICA INC.,
Plaintiff,

By its attorney,

*/s/ Lee E. Rajsich*
Lee E. Rajsich (BBO #676714)
COHAN PLAUT RAJSICH LLP
50 Milk Street, 16th Floor
Boston, MA 02109
(617) 947-7442
lrajsich@crmllp.com

Dated: October 14, 2026